CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
5/13/2024
LAURA A. AUSTIN, CLERK
BY: s/ Christel Kemp
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IVAN MONROE BREWER, II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00087 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TIMOTHY B. VANMARTER, | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendant. | ) | |

Plaintiff Ivan Monroe Brewer, II ("Brewer"), proceeding *pro se*, brought this action against Defendant Officer Timothy B. VanMarter ("VanMarter"), alleging that VanMarter violated his Second and Fourteenth Amendment rights when VanMarter did not return a firearm seized by another officer in response to a physical altercation that led to Brewer facing criminal charges. This matter is now before the court on VanMarter's motion to dismiss for failure to state a claim. Because VanMarter's conduct, as described by Brewer, is protected by qualified immunity, the court will grant his motion and dismiss Brewer's claims.[1]

### I.  STATEMENT OF FACTS

The following facts are taken from Brewer's complaint and, at this stage, presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Two points are worth noting at the outset. First, VanMarter argues Brewer's complaint merely alleges that VanMarter delivered a message to Brewer but did not actually possess or decide to deprive him of his firearm. (*See* Def.'s Br. Supp. Mot. Dismiss at 4 [ECF No. 6].) That is a plausible reading of the complaint, but the court must view the allegations in the light most favorable to Brewer at this stage. The court's analysis therefore proceeds on the assumption that VanMarter was more than a messenger and made the decision not to return the firearm to Brewer. Second, the court does not analyze whether the initial seizure of Brewer's firearm by the other officer was proper because the complaint does not allege a constitutional violation by that officer and explicitly states that VanMarter did not take the firearm from Brewer's vehicle.

On October 28, 2023, Brewer was involved in an altercation that resulted in him being charged with misdemeanor assault and battery and "a felony."[2] (Compl. at 1 [ECF No. 1].) As part of responding to the incident, a Roanoke County police officer seized a Ruger 9 mm firearm that was in Brewer's vehicle. (*Id.*) Brewer asserts that the firearm was not involved in the altercation. (*Id.*)

After a court hearing on November 2, Brewer contacted the Roanoke County Police Department to retrieve his firearm. (*Id.*) Approximately one week later, an officer allegedly informed Brewer that he could pick up his gun. (*Id.* at 1–2.) When Brewer went to do so, however, VanMarter told Brewer that he could not return the firearm until Brewer was found not guilty of his pending felony charge. (*Id.* at 2.) VanMarter further instructed Brewer not to possess or be around any firearms, or else he would be subject to further criminal liability. (*Id.*) Brewer protested that he was innocent until proven guilty and needed the gun to protect his family, but VanMarter held firm. (*Id.*) VanMarter told Brewer that, to ensure public safety, it was the police department's protocol to keep the firearm during the pendency of Brewer's felony case or until a magistrate judge and the Commonwealth Attorney permitted its return. (*Id.*)

Three months later, on February 5, 2024, Brewer filed this lawsuit. The court liberally construes his complaint as setting forth claims against VanMarter under 42 U.S.C. § 1983 for

---

[2] The complaint does not specify the nature of the felony charge, but the court takes judicial notice that Brewer was arrested for felony strangulation, in violation of Va. Code Ann. § 18.2-51.6, on November 1, 2023. *See* Roanoke Cnty. Cir. Ct. Case No. CR24000127-00, *Va. Judiciary Online Case Info. Sys. 2.0*, https://eapps.courts.state.va.us/ocis/search (last visited May 13, 2024); *see also Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment."). State court records also reflect that the "Offense Date" for the felony charge is October 28, 2023, the altercation date Brewer cites in his complaint.

alleged Second and Fourteenth Amendment violations.[3] VanMarter subsequently filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Brewer's complaint fails to state a claim against him because, among other reasons, he is entitled to qualified immunity. (ECF Nos. 5–6.) The motion has been fully briefed and is ripe for decision.[4]

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals

---

[3] To allow for the development of potentially meritorious claims, federal courts must construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

[4] The court dispenses with oral argument because it would not aid in the decisional process.

the existence of a meritorious affirmative defense." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)). "One such defense is qualified immunity." *Id.* "[Q]ualified immunity is an immunity from suit," and early consideration of a qualified immunity defense is consistent with the doctrine's purpose of ensuring implausible claims against government officials are resolved "at the earliest possible stage in litigation" and prior to discovery. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (cleaned up). Accordingly, the court must rule on a qualified immunity defense raised in a motion to dismiss. *See, e.g.*, *Mays v. Sprinkle*, 992 F.3d 295, 302 n.5 (4th Cir. 2021).

### III.  ANALYSIS

Officer VanMarter contends that he is entitled to qualified immunity on Brewer's claims. (Def.'s Br. Supp. Mot. Dismiss at 7–10.) The court agrees and will grant VanMarter's motion to dismiss.[5]

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014) (cleaned up) (quoting *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013)). Evaluating a claim of qualified immunity involves a two-part test: (1) "whether the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right," and (2) "whether [that] right was clearly established at the time the violation occurred such that a

---

[5] To the extent the complaint also seeks an injunction against the Roanoke County Police Department, Brewer conceded that such relief is improper in these circumstances because he failed to respond to VanMarter's argument on this issue. *See, e.g.*, *Gowen v. Winfield*, No. 7:20-cv-00247, 2022 WL 822172, at *3 (W.D. Va. Mar. 18, 2022) (collecting cases to support that a party's failure to respond to an argument in a dispositive motion results in the party conceding the issue). Because complete dismissal is therefore warranted, the court does not address the other arguments in VanMarter's motion to dismiss.

reasonable person would have known that his conduct was unconstitutional." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 100 n.3 (quoting *Pearson*, 555 U.S. at 236). If the answer to either prong is "no," the doctrine of qualified immunity shields the defendant from liability. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

Here, the court declines to address the first prong because the complaint includes few details about Brewer's arrest and VanMarter's conduct, meaning analysis of that prong would be based on an incomplete understanding of the facts at play. *See Pearson*, 555 U.S. at 238–39 (stating that it is appropriate for a court to skip the first prong of the qualified immunity test to avoid the risk of bad decision-making if the facts are underdeveloped at the pleading stage).

To determine if VanMarter violated a clearly established right, the court must examine "cases of controlling authority" which, for the present matter, means decisions of the United States Supreme Court, Fourth Circuit, and Supreme Court of Virginia. *See Franklin v. City of Charlotte*, 64 F.4th 519, 534 (4th Cir. 2023). When reviewing the controlling authority, the court must be careful "not to define clearly established law at too high a level of generality." *Id.* (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)). Instead, a right is clearly established only if its "contours [are] so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up). In other words, although a case directly on point is unnecessary, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up).

VanMarter's refusal to return Brewer's firearm because of his pending felony charge did not violate any clearly established Second or Fourteenth Amendment rights. Despite Brewer's general propositions about the right to bear arms and right to due process (*see generally* Pl.'s Br. Opp'n Mot. Dismiss [ECF No. 9]), he does not identify a single case that establishes VanMarter's particular conduct was unlawful. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) ("[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the officer] on notice that his specific conduct was unlawful."). The court is also unaware of any authority that clearly establishes VanMarter's actions violated Brewer's rights. And this is not an "obvious case" where it is clear that VanMarter's conduct violated the law. *See id.*

According to Brewer, he did not interact with VanMarter until after he was arrested and the state court held a hearing on his criminal charges. (*See* Compl. at 1–2.) By the time VanMarter declined to return the firearm, Brewer had been charged with a felony, necessarily meaning a magistrate already found probable cause for that felony charge to proceed. *See Silk v. Clarke*, No. 7:21-cv-294, 2022 WL 2680862, at \*6 (W.D. Va. July 12, 2022) (citing *Moore v. Commonwealth*, 237 S.E.2d 187, 190 (Va. 1977)) (discussing how, under Virginia law, a judicial officer must find probable cause for a charged crime to ensure the accused is not unfairly burdened following an arrest but before an indictment); *see also* Va. Code Ann. §§ 19.2-72, 19.2-82, 19.2-218 (requiring probable-cause findings in connection with a person's arrest for a felony). VanMarter then made the decision not to return Brewer's firearm based on the police department's established protocol, his concern for public safety, and his understanding that Brewer could not possess a gun while facing felony charges. (*See* Compl. at 2.)

Brewer argues that VanMarter's actions were not justified because he had not been formally indicted when VanMarter retained the firearm.[6] (*See* Pl.'s Br. Opp'n Mot. Dismiss at 2–3.) But it would be nonsensical, for a number of reasons, to hold a police officer liable for not returning a firearm to a defendant he knew had a pending violent felony charge. For instance, the officer could expose himself to criminal liability by doing so because knowing of the felony charge may give him "reasonable cause to believe" the defendant "is under indictment for . . . a crime punishable by imprisonment for a term exceeding one year." *See* 18 U.S.C. § 922(d)(1). Under federal law, then, it may have been a *crime* for VanMarter to return Brewer's firearm.

Qualified immunity protecting VanMarter's conduct is further supported by the fact that Second Amendment jurisprudence is currently undergoing a "sea change" following the Supreme Court's ruling in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *See Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041–42 (4th Cir. 2023), *reh'g en banc pending*, 2024 WL 124290 (Jan. 11, 2024). *Bruen* has left courts grappling with how the Second Amendment applies in different situations, including when a person is charged with or convicted of a crime, and created marked uncertainty in the controlling law. *See United States v. Hill*, No. 3:23-cr-114, 2023 WL 8238164, at *11 (E.D. Va. Nov. 28, 2023) ("This Court feels compelled to offer, respectfully, insight as to what lower courts must grapple with when reviewing a Second Amendment *Bruen* challenge because the *Bruen* dictates likely will defy consistent application and will create unreliable and confusing law."); *cf. Md. Shall Issue, Inc.*,

---

[6] The court notes that Virginia's public records show that Brewer was indicted on the felony charge in April 2024. *See* Roanoke Cnty. Cir. Ct. Case No. CR24000127-00, *supra* note 2.

2024 WL 124290, at *1 (rehearing en banc granted in arguably the most significant Second Amendment case to reach the Fourth Circuit post-*Bruen*). That uncertainty underscores that it was not clearly established that Brewer—having been charged with felony strangulation—was unquestionably entitled to possess a dangerous and deadly weapon, one that is subject to a vast array of local, state, and federal laws and regulations.

Finally, analogous decisions indicate that VanMarter's actions did not violate clearly established law. Courts throughout the country have routinely found that restrictions on a criminal defendant's right to possess firearms do not violate the Second Amendment. *See, e.g.*, *United States v. Allen*, No. 5:23-cr-10, Order at 3–4 (W.D. Va. Jan. 10, 2024) [ECF No. 81] (collecting cases); *United States v. Porter*, No. CR 3:22-00055, 2023 WL 113739, at *3 (S.D.W. Va. Jan. 5, 2023) (upholding the constitutionality of 18 U.S.C. § 922(d)(1)); *United States v. Jackson*, 661 F. Supp. 3d 392, 398–415 (D. Md. 2023), *appeal pending*, No. 24-4114 (undertaking an assiduous Second Amendment analysis before concluding that 18 U.S.C. § 922(n) is constitutional); *cf. Bruen*, 597 U.S. at 70 ("The Second Amendment guaranteed . . . the right to bear commonly used arms . . . subject to certain reasonable, well-defined restrictions."). Courts have also ruled that—despite the presumption of innocence—restrictions on a defendant's property or liberty during the pendency of a criminal matter do not typically violate due process rights if, as in Brewer's situation, the restrictions were imposed after a probable-cause determination that the defendant committed a serious crime. *See Jackson*, 661 F. Supp. 3d at 403–04 (collecting cases). To be sure, these analogous cases are not controlling authority for this matter given their varying circumstances, but they reinforce that VanMarter's actions did not violate clearly established Second and Fourteenth Amendment rights—even after *Bruen*.

In sum, it was not clearly established that Brewer was entitled to possess a gun after being charged with a violent felony and before the charge had been adjudicated, so VanMarter is entitled to qualified immunity. *See Tarpley v. Eikost*, No. 4:07-cv-00030, 2007 WL 2965044, at *3 (W.D. Va. Oct. 10, 2007).

## IV. CONCLUSION

For these reasons, the court will grant VanMarter's motion and Brewer's complaint will be dismissed without prejudice.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties and all counsel of record.

**ENTERED** this 13th day of May, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE